UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW LATTAURLO,<br><br>       Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY;<br><br>TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;<br><br>RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection;<br><br>JOHN DOE 1, in his official capacity as an agent of U.S. Immigration and Customs Enforcement;<br><br>JOHN DOE 2; in his official capacity as an agent of U.S. Immigration and Customs Enforcement;<br><br>JOHN DOE 3; in his official capacity as an agent of U.S. Immigration and Customs Enforcement;<br><br>JANE DOE, HSI ID NO.: 11049, in her official capacity as an agent of Homeland Security Investigations; and<br><br>THE UNITED STATES OF AMERICA,<br><br>       Defendants. | C.A. No. :    1:25-CV-12861 |

**<u>VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF</u>**

This is an action by the Plaintiff, Andrew Lattarulo ("Lattarulo"), a licensed Massachusetts attorney focused on immigration work, for the return of property unlawfully seized by the Defendant, United States of America, through its agents, Defendants John Does 1-3 and Jane Doe (HSI ID No.: 11049) (collectively, the "Doe Defendants" or the "federal agents"), acting under the following agencies/Defendants: U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("USCBP"), U.S. Immigration and Customs Enforcement ("ICE"), Kristi Noem ("Noem"), Rodney S. Scott ("Scott"), Todd Lyons ("Lyons"), and the United States of America. On September 28, 2025. Lattarulo, a United States Citizen returning from a weekend away, is an immigration attorney whose firm represents thousands of clients involved in ongoing immigration-related proceedings. On September 28, 2025, at Boston Logan International Airport – Terminal C (a domestic terminal), federal agents (the Doe Defendants) from the Department of Homeland Security stopped Lattarulo and seized his business cell phone without reasonable suspicion or probable cause, in violation of Lattarulo's federal constitutional rights. The Doe Defendants refused to identify themselves beyond one providing her identification number. Lattarulo's business cell phone contains confidential attorney-client privileged communications, work product, and other confidential information. The search and/or seizure of Lattarulo's phone, warrantless or otherwise, violated both Lattarulo's rights as well as his clients'.

## PARTIES

1. Plaintiff Andrew Lattarulo is a United States Citizen with a residence at 99 Pheasant Brook Road, North Andover, Essex County, Massachusetts. Lattarulo is a lawyer and the owner of Georges Cote LLP, an immigration law firm representing thousands of clients in active immigration-related proceedings. Lattarulo also runs a social media account that provides

immigrants with know-your-rights education and information on the United States' immigration policies.

2. Defendant U.S. Department of Homeland Security ("DHS") is a department of the Executive branch of the United States Government, and is responsible for securing the nation's borders, in part by enforcing federal immigration laws and managing the immigration process. DHS is an agency within the meaning of 28 U.S.C. § 1346(a)(2). DHS has possession, custody, and control of Lattarulo's phone.

3. Defendant Kristi Noem ("Noem") is the Secretary of DHS. She oversees all functions of DHS and its agencies. She is a party only in her official capacity.

4. Defendant Todd Lyons ("Lyons") is the Director of U.S. Immigration and Customs Enforcement ("ICE"). He oversees all functions of ICE. He is a party only in his official capacity.

5. Defendant Rodney Scott ("Scott") is the Commissioner of Customs and Border Protection ("CBP"). He oversees all functions of CBP. He is a party only in his official capacity.

6. Defendants John Doe 1-3 are federal agents employed by ICE.

7. Defendant Jane Doe (HSI ID No. 11049) is a federal agent employed by Homeland Security Investigations ("HSI").

8. Defendant United States of America refers to the Department of Homeland Security, including United States Immigration and Customs Enforcement and the Homeland Security Investigations team, the United States Attorney General, the United States Attorney for the District of Massachusetts, and all state, local, and federal law enforcement, investigative, and prosecutorial agencies acting under their direction, as well as their agents, employees, etc.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, the First and Fourth Amendments, and Article III of the U.S. Constitution.

10. The Court has the authority to issue the requested relief pursuant to 5 U.S.C. § 706(2), Rule 41(g) of the Federal Rules of Criminal Procedure, and the Court's inherent equitable powers. The Court has authority to award costs and attorneys' fees pursuant to 28 U.S.C. § 2412.

11. Pursuant to 28 U.S.C. §1391(b) and Rule 41(g) of the Federal Rules of Criminal Procedure, venue is proper because the events giving rise to this action occurred in this district.

**FACTS**

12. On September 28, 2025, Lattarulo traveled from Queen Beatrix International Airport in Oranjestad, Aruba, to Boston Logan International Airport in Boston, Massachusetts, on a direct flight operated by JetBlue Airways Corporation.

13. At approximately 11:00 AM, before boarding his flight in Aruba, Lattarulo cleared United States Customs and Border Protection at Queen Beatrix International Airport. This is part of the United States Customs and Border Protection ("CBP") Preclearance program.

14. According to the official United States Customs and Border Protection website:

[CBP] Preclearance is the strategic stationing of CBP personnel at designated foreign airports to inspect travelers prior to boarding U.S.-bound flights. With Preclearance, travelers then bypass CBP and Transportation Security Administration (TSA) inspections upon U.S. arrival and proceed directly to their connecting flight or destination.

https://www.cbp.gov/travel/preclearance (last accessed September 29, 2025). *See* **Exhibit A**.

15. Despite completing the required international travel inspection by the CBP in Aruba, when Lattarulo exited the plane in Boston, he was approached and detained by three uniformed

U.S. Customs and Border Protection agents (John Does 1-3) and one uniformed Homeland Security Investigations ("HSI") officer (Jane Doe, HSI ID No.: 11049) (collectively, the "Doe Defendants").

16. At approximately 7:15 PM, Lattarulo exited the plane, traveled through the passenger boarding bridge, and arrived at the terminal gate.

17. When Lattarulo reached the gate entrance/exit, he was approached and surrounded by the Doe Defendants.

18. The Doe Defendants presented themselves as federal agents conducting a border search.

19. The Doe Defendants were present when Lattarulo exited the plane.

20. The Doe Defendants were present in Terminal C.

21. Terminal C is a domestic terminal.

22. The Doe Defendants did not approach other passengers from Lattarulo's flight.

23. The Doe Defendants were present for the purpose of approaching Lattarulo and seizing his phone.

24. The Doe Defendants did not present a warrant to seize or search Lattarulo's phone.

25. Lattarulo asked the Doe Defendants to identify themselves and to provide a reason for detaining him. The Doe Defendants refused to give a reason for the stop or to identify themselves, beyond stating it was a "border search."

26. Notably, Lattarulo was in Terminal C, a domestic terminal, not Terminal E, where international flights arrive and go through U.S. Customs and Border Protection Processing.[1] This is because Lattarulo pre-cleared the border at his point of origin, Aruba.

---

[1]    https://www.massport.com/logan-airport/flights/international-flights (last accessed September 30, 2025). *See* **Exhibit B**.

27. The Doe Defendants[2] asked Lattarulo if he was traveling alone.

28. Lattarulo responded that he was traveling back from Aruba with some friends, including his brother, Daniel Lattarulo, who is also an attorney.

29. Daniel Lattarulo was present and filmed much of his brother's detention. Daniel Lattarulo was instructed by John Doe 1 that he was not allowed to film the interaction. He disregarded this unlawful statement out of concern for his brother's safety. *See* **Exhibit C.**



Images Excerpted from **Exhibit C**

30. Lattarulo was then asked for his passport, which he provided.

---

[2]        Doe Defendants' statements are attributed to all Doe Defendants; however, most of the statements were made by Jane Doe.

31. Lattarulo identified himself as an immigration attorney, provided his bar card, and again asked why he was being stopped.

32. The Doe Defendants told Lattarulo it was a "federal inspection" part of an ongoing border search.

33. Lattarulo had an iPhone 15 Pro Max in his hand when the Doe Defendants detained him.

34. Jane Doe told Lattarulo that the Doe Defendants were seizing his cell phone. Lattarulo explained that it is his business cell phone and contained sensitive and confidential communications between himself and his clients, as well as privileged conversations between himself and other attorneys.

35. Lattarulo was told by the Doe Defendants that if he did not give them his phone, they would physically remove it from him.

36. Again, Lattarulo asked the individuals to identify themselves and provide a reason for the seizure of a cell phone containing privileged and sensitive information. The agents and officers continued to refuse to identify themselves and repeated that the seizure was standard procedure and that they did not need to provide him with a reason.

37. Jane Doe asked Lattarulo to provide his address and a telephone number at which he can be reached.

38. There is confidential and privileged information on Lattarulo's phone or that may be accessed via his phone.

39. Federal agents will have no way of identifying which information is privileged without Lattarulo's input.

40. The Doe Defendants informed Lattarulo that they would be taking his phone with or without his cooperation.

41. Lattarulo did not provide his passcode to the Doe Defendants, nor did they request it.

42. At or about 7:25 PM, the Doe Defendants seized Lattarulo's phone, and he was provided with a Detention Notice and Custody Receipt for Detained Property ("Detention Notice"). *See* **Exhibit D**.

43. The HSI agent who signed the Detention Notice, Jane Doe, did not identify herself by her name. Under "Detaining Officer Name" she wrote "11049". *Id.*

44. The Doe Defendants did not search Lattarulo's bags or person.

45. Lattarulo was not arrested after his phone was seized.

46. The Doe Defendants did not have reasonable suspicion that Lattarulo had committed, was committing, or was about to commit a crime.

47. The Doe Defendants did not have reasonable suspicion that Lattarulo had violated customs, immigration, and other laws that CBP is authorized to enforce and administer.

48. The Doe Defendants did not have reasonable suspicion that Lattarulo engaged in activity that violated the laws enforced or administered by CBP, or in which there is a national security concern.

49. The Doe Defendants' actions indicated they were only interested in his business communication device – his phone.

50. The Doe Defendants failed to follow CBP Directive No. 3340-049A, Border Search of Electronic Devices (2018) (the "CBP Policy")

51. The Doe Defendants did not notify Lattarulo "of the purpose and the authority for such search, how [he] may obtain more information on reporting concerns about their search, and how [he] may seek redress from the agency if [he] feels aggrieved by a search." 5.4.1.3 of the CBP Policy.

52. Further, despite Lattarulo clearly communicating to the Doe Defendants that the device contained privileged information, they did not seek clarification as to "specific files, file types, folders, categories of files, attorney or client names, email addresses, phone numbers, or other particulars that may assist CBP in identifying privileged information."

    5.2.1.1. Instead, they offered a blanket assurance that no one would look at privileged information.

53. The Doe Defendants did not provide Lattarulo with a timeline for when he would receive his cell phone back; however, they made it clear that the phone would be searched.

54. Upon information and belief, this seizure was made in response to public statements Lattarulo made on U.S. immigration policy.

55. Lattarulo was targeted because he is an immigration attorney.

56. On September 6, 2025, DHS announced that its agent ICE launched operation "Patriot 2.0" in Boston, Massachusetts.[3]

57. Throughout the year, Massachusetts residents have been targeted by the federal government through mass arrests and public vilification.

58. In a speech on February 22, 2025, White House Border Czar, Thomas Homan, stated publicly, "I'm coming to Boston, I'm bringing hell with me."[4]

59. Lattarulo posts via an Instagram account through which he provides immigrants and the public with know-your-rights information about U.S. immigration matters.

60. This account is popular among the immigrant community in the Boston area, with many videos garnering hundreds of thousands of views. Many of these videos call out what

---

[3]    https://www.dhs.gov/news/2025/09/09/ice-arrests-worst-worst-including-rapists-child-abusers-drug-traffickers-and-other (last accessed October 1, 2025).  *See* **Exhibit E**.

[4]    https://www.cbsnews.com/boston/news/immigration-tom-homan-president-trump-sanctuary-city-boston/ (last accessed October 1, 2025).  *See* **Exhibit F**.

Lattarulo describes as illegal practices utilized by federal agents. Lattarulo's public statements are also critical of President Donald Trump's immigration policy.

61. Three days after Homan's speech, on February 25, 2025, Lattarulo posted a video providing advice on how to handle interactions with ICE agents. This video was viewed by 388,000 Instagram users, 10,200 Instagram users liked the video, and 14,200 Instagram users shared the video with other users.  These numbers are approximations as of the date of this filing.



♡ 10.2K    �💬 162    ⇄ 1    ◁ 14.2K                                    🔖

georgescotelaw 🔴 Preso pelo ICE Só Por Dizer Que Era Brasileiro! 🇧🇷
⚠️ … more
February 25 · See translation

62. On May 12, 2025, Lattarulo was featured in a story by WCVB-TV, a television station in

Massachusetts, titled "'No warrant was ever shown': Attorney of woman detained by ICE

in Worcester, Mass., speaks out after arrest." In the article, Lattarulo is quoted saying "The

way [ICE] is arresting people is putting the public at risk." *See* **Exhibit G**.

63. On September 9, 2025, three days after DHS announced Operation Patriot 2.0, Lattarulo posted on social media a video criticizing the operation and advising immigrants living in Massachusetts to be careful.

64. Nineteen days later, Lattarulo was detained by federal agents, and his phone, the phone he uses to communicate with clients, communicate with other attorneys, and post to social media, was seized without a warrant or reasonable suspicion.

## **COUNT I – Against All Defendants**

*Fourth Amendment Violation – Warrantless Search and Seizure of Cell Phone*

65. Lattarulo incorporates the averments and allegations set forth in paragraphs 1 – 64 of the Complaint as if fully set forth herein.

66. The seizure and search of Lattarulo's cell phone was without a warrant, without consent, and without probable cause. As such, the September 28, 2025, seizure was unreasonable

67. The "border exception" does not apply to the seizure of Lattarulo's cell phone for two reasons: (1) Lattarulo was no longer at the border or the functional equivalent of the border; he was in a domestic terminal in Boston Logan Airport and had already completed CBP inspection over eight hours before detention; and (2) the seizure of a cell phone containing privileged and confidential information of thousands of clients was so intrusive that it required some level of individualized suspicion, the object of that suspicion must bear some nexus to the purposes of the border search exception for the exception to apply, and no such nexus existed here.

68. Lattarulo is entitled to the return of his business cell phone because the warrantless nonroutine seizure of his business cell phone violated the Fourth Amendment of the United States Constitution.

69. The Doe Defendants were acting under the supervision and at the direction of the co-Defendants when they violated Lattarulo's Fourth Amendment rights.

## <u>COUNT II – Against All Defendants</u>

*First Amendment Violation – Warrantless Search and Seizure of Cell Phone*

70. Lattarulo incorporates the averments and allegations set forth in paragraphs 1 – 69 of the Complaint as if fully set forth herein.

71. Lattarulo was not randomly stopped at the border.

72. In fact, he was no longer at the border when he was stopped.

73. CBP had already inspected him prior to his arrival back in Boston.

74. The Doe Defendants were waiting for Lattarulo at the gate because he is an immigration attorney, has posted information online that has been widely viewed, and he has been critical of President Trump and the DHS's immigration policies and enforcement tactics.

75. Lattarulo's business cell phone was targeted specifically because of his expressive material criticizing President Trump's immigration policies and his association with clients of mixed immigration status.

76. Lattarulo was not asked questions related to border control, customs, trade, immigration, or terrorism, and the Doe Defendants did not suggest Lattarulo had broken the law or that his phone may contain illegal material or contraband.

77. The Doe Defendants used a border search to pierce the attorney-client privilege.

78. "The First Amendment protects political associations as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). The right of expressive association "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

79. Compelled disclosure of First Amendment-protected activity can itself be a burden on First Amendment freedoms. *Buckley* at 64. Notably, an encounter at the border "does not strip [a citizen] of his First Amendment rights." *House v. Napolitano*, 2012 U.S. Dist. LEXIS 42297, at \*13

80. As such, the September 28, 2025, seizure by the Doe Defendants violated Lattarulo's First Amendment rights. He is entitled to the immediate return of his cell phone, a documentation of the chain of custody of any copies made of the information contained on his cell phone, and documentation of the destruction of said information.

81. The Doe Defendants were acting under the supervision and at the direction of the co-Defendants when they violated Lattarulo's First Amendment rights.

## IRREPARABLE INJURY

82. Lattarulo and his clients would suffer irreparable injury if the requested relief is not granted. Lattarulo's phone contains or provides access to privileged attorney-client communications, attorney work product, privileged and confidential intra- and inter-firm communications, and confidential information. The unlawful seizure and search of Lattarulo's phone expose his clients' privileged information to an adversary agency. This harm cannot be undone.

## REQUESTS FOR RELIEF

Lattarulo requests that the Court grant the following forms of relief:

A. Enter judgment in favor of Lattarulo on all counts.

B. Order Defendant to return the seized cell phone forthwith.

C. Order Defendant to produce documentation of the chain of custody of any copies made

of the information contained on his cell phone and documentation of the destruction of

said information.

D. Award costs, including reasonable attorney fees.

E. Grant all such other and further relief as the Court deems just and proper.

ANDREW LATTARULO
By his attorneys,

Dated: October 2, 2025

/s/ *Mary Lemay*
Mary Lemay, BBO # 711345
Patrick Hanley, BBO # 658225
BUTTERS BRAZILIAN LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
Phone: 617-367-2600
hanley@buttersbrazilian.com
lemay@buttersbrazilian.com

## <u>VERIFICATION</u>

     I, Andrew Lattarulo, Plaintiff in the above-captioned action, certify that I have read the foregoing Verified Complaint, understand the allegations thereof, and absent inadvertent mistakes, the facts stated herein are true and correct to my knowledge and that no material facts have been omitted therefrom.

     Signed under the pains and penalties of perjury.


10/02/2025
_____
Date

                                     _____
                                     Andrew Lattarulo, Esq.

# Lattarulo - Verification

**Final Audit Report**                                                    2025-10-02

| | |
|---|---|
| Created: | 2025-10-02 |
| By: | Mary Lemay (lemay@buttersbrazilian.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAgh9pd6F_TWZOk4SaEP1eSH4AHc3H3Z14 |

## "Lattarulo - Verification" History

📄 Document created by Mary Lemay (lemay@buttersbrazilian.com)
  2025-10-02 - 2:07:29 PM GMT

✉ Document emailed to Andrew Lattarulo (agl@georgescotelaw.com) for signature
  2025-10-02 - 2:07:32 PM GMT

📄 Email viewed by Andrew Lattarulo (agl@georgescotelaw.com)
  2025-10-02 - 3:45:54 PM GMT

✒ Document e-signed by Andrew Lattarulo (agl@georgescotelaw.com)
  Signature Date: 2025-10-02 - 3:46:08 PM GMT - Time Source: server

✅ Agreement completed.
  2025-10-02 - 3:46:08 PM GMT

Adobe Acrobat Sign