UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW LATTAURLO, <br><br>　　　　Plaintiff, <br><br>v. <br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY; <br><br>TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; <br><br>RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; <br><br>JOHN DOE 1, in his official capacity as an agent of U.S. Immigration and Customs Enforcement; <br><br>JOHN DOE 2; in his official capacity as an agent of U.S. Immigration and Customs Enforcement; <br><br>JOHN DOE 3; in his official capacity as an agent of U.S. Immigration and Customs Enforcement; <br><br>JANE DOE, HSI ID NO.: 11049, in her official capacity as an agent of Homeland Security Investigations; and <br><br>THE UNITED STATES OF AMERICA, <br><br>　　　　Defendants. | C.A. No.:  1:25-cv-12861 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS <u>EMERGENCY</u> MOTION TO RETURN AN ATTORNEY'S UNLAWFULLY SEIZED CELL PHONE AND TO ENJOIN THE SEARCH OF THE ATTORNEY'S CELL PHONE**

NOW COMES Plaintiff who respectfully moves this Court to order the immediate return of his business cell phone, which was unlawfully seized from him on September 28, 2025, at Boston Logan International Airport by agents of the United States Department of Homeland Security, Defendants John Does 1-3 and Jane Doe (HSI ID No.: 11049) (collectively, the "Doe Defendants" or the "federal agents"), acting under the following agencies/Defendants: U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), Kristi Noem ("Noem"), Rodney S. Scott ("Scott"), Todd Lyons ("Lyons"), and the United States of America.

The seizure of the Plaintiff's cell phone was made without a warrant, without consent, and without a reasonable suspicion of Plaintiff's involvement in criminal activity. The seizure was made over eight hours *after* Plaintiff had been inspected by CBP at a border crossing. As such, Plaintiff moves, pursuant to the Federal Rules of Criminal Procedure Rule 41(g) ("Rule 41(g)"), for the immediate return of his business cell phone as it was unlawfully seized and most likely searched in violation of Plaintiff's rights under the First and Fourth Amendments to the United States Constitution, and the Constitutional rights of his clients.

**I.     <u>Facts</u>[1]**

Plaintiff, Andrew Lattarulo ("Lattarulo"), a United States Citizen, is a licensed Massachusetts immigration attorney. Lattarulo's firm represents thousands of clients involved in immigration-related proceedings., On September 28, 2025, at Boston Logan International Airport – Terminal C (a domestic terminal), federal agents (the Doe Defendants) stopped Lattarulo as he

---

[1]     Lattarulo incorporates the facts set forth in his verified Complaint as if fully stated herein.

was returning from a weekend away in Aruba. The federal agents seized Lattarulo's business cell phone without probable cause in violation of Lattarulo's federal constitutional rights.

The federal agents did not provide a reason for seizing the phone and would not tell Lattarulo what they were looking for. The only reason to seize the phone was to search it. During the seizure, federal agents refused to identify themselves. One federal agent, Jane Doe, provided her identification number in lieu of her name on a property receipt form.

Lattarulo's business cell phone contains privileged communications (including communications between Lattarulo and his clients), confidential attorney work product, and other confidential information, such as information private to Lattarulo. Any search, warrantless or otherwise, would violate both Lattarulo's and his clients' rights.

## II. Legal Argument

### a. The Seizure and Search of Plaintiff's Business Cell Phone Violates the Fourth Amendment.

Plaintiff's business cell phone was seized without a warrant approximately eight hours after he completed and passed through United States Customs and Border Inspection in Aruba. This seizure and the follow-on search violated Plaintiff's Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. Warrantless searches and seizures are presumed unreasonable. *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Alassad v. Mayorkas*, 988 F.3d 8, 16 (1st Cir. 2021), quoting *Riley v. California*, 573 U.S. 373, 382 (2014).

The border search exception is one such exception. *Id.* The exception derives from a recognition of the government's "inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153

(2004). Notably, the "border search" exception to the warrant requirement is not boundless. The Supreme Court has explained that even when the exception appears to apply, certain "highly intrusive searches" may qualify as "nonroutine" and so require some level of individualized suspicion. *Flores-Montano*, 541 U.S. at 152 [internal citations omitted].

### i. The Seizure and Search of an Immigration Attorney's Business Cell Phone is a Non-Routine Search that Requires Reasonable Articulable Suspicion of Criminal Activity.

The First Circuit has distinguished between "routine" and "non-routine" border searches. Whether a search is "'routine' or 'not routine' often depends on the degree of invasiveness or intrusiveness associated with' the search" *United States v. Molina-Gomez*, 781 F.3d 13, 19 (1st Cir. 2015), quoting *United States v. Braks*, 842 F. 2d 509, 511-512 (1st Cir. 1988). "[N]on-routine" border searches involve a greater "degree of invasiveness or intrusiveness" than "routine" searches. *Id.* Circuit Courts have found that given the "unparalleled breadth of private information" that such a search could reveal, "a forensic search of a digital phone must be treated as a non-routine border search, requiring some form of individualized suspicion." *United States v. Kolsuz*, 890 F.3d 145-46 (4th Cir. 2018). "This restriction makes particularly good sense as applied to intrusive non-routine forensic searches of modern digital devices, which store vast quantities of uniquely sensitive and intimate personal information… yet cannot contain many forms of contraband, like drugs or firearms, the detection of which constitutes 'the strongest historic rationale for the border-search exception." *United States v. Aigbekaen*, 943 F. 3d 713, 721 (4th Cir. 2019) (internal citations omitted).

The seizure and search of the Plaintiff's business cell phone is a non-routine border search because the phone contains highly sensitive and privileged information. As such, it must be supported by reasonable suspicion that the search will turn up contraband or evidence of "activity in violation of the laws enforced or administered by CBP or ICE." *Alasaad v. Mayorkas*, 988 F.

4

3d 8, 18 (1st Cir. 2021). The required reasonable suspicion must be "objective" and based on "specific articulable facts . . . taken together with rational inferences from those facts." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

There was no reasonable suspicion that Plaintiff's cell phone contained contraband or evidence of criminal activity. In fact, the only reasonable inference is that Plaintiff's cell phone was seized because it contains privileged communications with clients he represents in immigration proceedings, social media posts providing immigrants with know your rights information, and expressions critical of the current administration's immigration policies. These are not crimes; they are constitutionally protected actions.

      ii. **The Border Exception to the Fourth Amendment Does Not Apply to the Seizure and Search of an Immigration Attorney's Business Cell Phone Eight Hours After He Completed Customs and Border Inspection.**

For the border search exception to apply to the Fourth Amendment, the search needs to take place at the border or the functional equivalent of the border. *United States v. Perez Rivera*, 247 F. Supp. 2d 108, 114 (D.P.R. 2003). "The functional equivalent of the border is 'the first point at which an entrant may practically be detained.'" *Id.* at 16-17 (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 539-540 (1985). The inspection in Aruba was the first point at which Plaintiff could have been detained; thus, the international airport in Aruba was the functional equivalent of the border. Here, Plaintiff was detained when he got off the plane in Boston at Terminal C, a terminal without CBP. Plaintiff was detained despite having completed an inspection by CBP approximately eight hours earlier in Aruba.

The detention of Plaintiff and seizure of his business cell phone constituted an "extended border search." While the extended border search doctrine allows for searches at a greater distance from the border, they are subject to more stringent requirements because the traveler has regained

5

his normal expectation of privacy in his effects. *Perez Rivera*, 247 F. Supp. 2d at 114-15; see also *United States v. Stewart*, 729 F.3d 517, 525 (6th Cir. 2013) (noting that "extended border searches 'occur after the actual entry has been effected and intrude more on an individual's normal expectation of privacy'" (quoting *United States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985))); *United States v. Cotterman*, 709 F.3d 952, 961 (9th Cir. 2013) (en banc) ("The key feature of an extended border search is that an individual can be assumed to have cleared the border and thus regained an expectation of privacy in accompanying belongings.")

"Whether deemed routine or non-routine, a search is permissible under the extended border search doctrine if: (1) there is reasonable certainty that the person or thing to be searched crossed the border; (2) there is reasonable certainty that nothing of significance has changed about the person or thing to be searched since the border crossing; and (3) there is reasonable suspicion that the person or thing to be searched was involved in criminal activity." *United States v. Rodriguez-Garcia*, 2025 U.S. Dist. LEXIS 121221 at 11, citing *Perez Rivera*, 247 F. Supp. 2d at 115. Thus, the seizure and subsequent search of Plaintiff's business cellphone eight hours after he completed Customs and Border Inspection is only permissible if there was a reasonable suspicion that Plaintiff's business cell phone was involved in criminal activity. There is no reasonable suspicion here that Plaintiff's business cell phone was involved in criminal activity. The phone, however, was used to facilitate communication with Plaintiff's clients and with the public at large on his opinion of the current Administration's immigration policies. As of this moment, public criticism of government is protected speech, not a crime.

### iii. Plaintiff's Phone Contains Privileged and Confidential Information.

As indicated, Plaintiff is an immigration lawyer. His phone contains or provides access to privileged attorney-client communications, attorney work product, privileged and confidential

intra- and inter-firm communications, and confidential information as defined by Mass. R. Prof. C. 1.6(a). The attorney-client privilege is sacrosanct and recognized:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection may be waived.

*United States v. Massachusetts Inst. Of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997), quoting 8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961).

Conducting a warrantless general search of his cell phone is tantamount to violating the statutory and Constitutional rights of his clients. An immediate injunction ordering the cessation of any effort to search, or any search already underway, is necessary and constitutes an emergency to Plaintiff and his clients.

### b. The Seizure and Search of Plaintiff's Business Cell Phone Based Solely on His Expressive Material and Association with Immigrants Violates the First Amendment.

"The First Amendment provides protections – independent of the Fourth Amendment - against the compelled disclosure of expressive information." *Alasaad v. Mayorkas*, 988 F. 3d 8, 20 (1st Cir. 2021). *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (compelled disclosure of First Amendment-protected activity itself can be a burden on First Amendment freedoms). Where such a burden is present, as an "inevitable result of the government's conduct in requiring the disclosure," there must be a "substantial relation between the government interest and the information required to be disclosed." *Id*. 64-65.

Notably, an encounter at the border "does not strip [a citizen] of his First Amendment rights." *House v. Napolitano*, 2012 U.S. Dist. LEXIS 42297, at *13. Previously, the First Circuit declined to find that the promulgated polices of CBP and ICE on border searches of electronic devices on their face violated the First Amendment. *Alasaad v. Mayorkas*, 988 F. 3d 8, 22-23 (1st

Cir. 2021). However, in that case, the Court noted that the opinion did *not* decide the issue of whether "the First Amendment would require a different outcome if CBP and ICE were targeting journalists or using border searches to pierce attorney-client privilege." *Id.* at n.17.

This is precisely what happened here. Here, CBP and ICE targeted Plaintiff because he is an immigration attorney who represents thousands of clients with mixed immigration statuses who are very publicly the subject of the current administration's effort to expel non-citizens.

As Judge Young wrote earlier this week, "they have done what they have repeatedly said they are doing[.]" *American Association of University Professors, et al. v. Marco Rubio, et al.*, Docket: 25-10685-WGY (D. Mass. Sept. 30, 2025). Here, it really is as transparent as it seems: federal agents were carrying out the Administration's plan.

  **c. The Unconstitutional Seizure of Plaintiff's Business Cell Phone Warrants an Emergency Motion Under Rule 41(g).**

This is an emergency motion because, if granted swiftly, it could prevent further violations of Plaintiff's constitutional rights and protect the attorney-client privilege of his vulnerable immigration clients.

  **i. Plaintiff has Certainly Met the Standard for an Emergency Injunction.**

In considering a plaintiff's motion for a preliminary injunction, the district court weighs four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs and (4) the effect, if any, on the public interest." *Jean v. Mass. State Police*, 492 F.3d 24, 26-27 (1st Cir. 2008).

First, the seizure and ensuing warrantless search were both illegal, making success virtually inevitable. Second, the harm to Plaintiff is great and to his clients is almost boundless. Third, there is no undue burden to the United States. If the government had grounds for a search warrant,

the federal agents could have obtained one. They clearly did not and instead used a pretextual post-border crossing stop to take his phone in a manner more akin to a shakedown than any justified law enforcement objective. Fourth, the conduct here was designed to chill speech. Specifically, criticism of the government. The public interest in deterring illegal searches intended to chill speech, infringe on constitutional rights of the target, Plaintiff, and the other targets, his clients, is at its apex in this case.

Earlier this week, Judge Young found that immigration enforcement actions "solely on the basis of political speech, and with the intent of chilling such speech…[are] not only unconstitutional, but a thing virtually unknown to our constitutional tradition." *American Association of University Professors, et al. v. Marco Rubio, et al.*, Docket: 25-10685-WGY (D. Mass. Sept. 30, 2025).

### ii. Rule 41(g) is the Appropriate Vehicle for the Court to Deliver the Injunction.

Under Rule 41(g), "a person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Motions under Rule 41(g) "must be filed in the district where the property was seized." The First Circuit has held that the "decision to grant or deny a pre-indictment Rule 41[g] motion for return of property turns primarily on equitable considerations; the court is entitled to balance the equities in deciding whether return is in order." *Angel-Torres v. United States*, 712 F.2d 717, 719-720 (1st Cir. 1983). Further, the district court may exercise jurisdiction over a motion for the return of property even when no criminal proceedings are pending because "[s]uch an action is treated as civil proceeding for equitable relief." *United States v. Peloro*, 488 F.3d 163, 172 (3rd Cir. 2007) [internal citations omitted].

9

Here, there is no reason to believe that the federal agents obtained a search warrant to either seize or search the phone, since none was presented. Instead, they claimed that they were conducting a border search. In Boston, they did not search Lattarulo's pockets and/or luggage. They gave him a receipt and asked for an address to send the phone back at a time that they would not specify. The Court should find that this search was unlawful and provide Plaintiff with the relief he seeks.

### III.  Conclusion

Rather than wait for anonymous federal agents to mail him the phone that they effectively stole from him, Plaintiff moves this Court to order the United States to stop searching it, to destroy whatever the federal agents have found so far, to prove that they have destroyed the information, and to give Plaintiff his phone back immediately.

ANDREW LATTARULO
By his attorneys,

Dated: October 2, 2025

/s/ Mary Lemay
Mary Lemay, BBO # 711345
Patrick Hanley, BBO # 658225
BUTTERS BRAZILIAN LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
Phone: 617-367-2600
hanley@buttersbrazilian.com
lemay@buttersbrazilian.com