# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ANDREW LATTARULO,

              Plaintiff,

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, and the
DEPARTMENT OF HOMELAND
SECURITY;

TODD LYONS, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement;

RODNEY SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection;

JOHN DOE 1, in his official capacity as an
Agent of U.S. Immigration and Customs
Enforcement;

JOHN DOE 2, in his official capacity as an
Agent of U.S. Immigration and Customs
Enforcement;

JOHN DOE 3, in his official capacity as an
Agent of U.S. Immigration and Customs
Enforcement;

JANE DOE, HSI ID NO.: 11049, in her
official capacity as an Agent of Homeland
Security Investigations; and

THE UNITED STATES OF AMERICA,

              Defendants.

Civil Action No. 25-12861-ADB

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO RETURN AN ATTORNEY'S UNLAWFULLY SEIZED CELL PHONE AND TO ENJOIN THE SEARCH OF THE ATTORNEY'S CELL PHONE**

## INTRODUCTION

Plaintiff Andrew Lattarulo filed a motion for injunctive relief asking the Court to "order the immediate return of his business cell phone"[1] which he contends "was unlawfully seized from him on September 28, 2025, at Boston Logan International Airport ("Logan Airport"). [Doc. No. 7 at 2]. In addition to return of his phone, Plaintiff seeks an order enjoining Defendants from conducting any search of the phone, and asks that any information obtained from his phone be destroyed or alternatively turned over to the Court. *Id.* He alleges, without basis in fact, that his phone was seized at Logan Airport in a design to "chill speech," *see id.* at 4, and that he was "targeted" because "he is an immigration attorney who represents thousands of clients with mixed immigration statuses who are very publicly the subject of the current administration's effort to expel non-citizens." *Id.* at 9.

Plaintiff's hyperbolic claims that he was targeted for a search at Logan Airport because of his protected speech and representation of noncitizens is aimed at distracting the Court from what appears to be the ultimate goal of his motion (and his lawsuit): destruction of evidence of Plaintiff's apparent employment of aliens who are unauthorized to work in the United States. Plaintiff challenges the border search at Logan Airport and alleges that the "seizure of the Plaintiff's cell phone was made without a warrant, without consent, and without a reasonable suspicion of Plaintiff's involvement in criminal activity," but never discloses to the Court—not in his Complaint, nor in the emergency motion he filed—that the U.S. Department of Homeland

---

[1] HSI returned Plaintiff's cell phone via overnight delivery on October 6, 2025.

Security ("DHS"), Homeland Security Investigations ("HSI") served a Notice of Inspection to Georges Cote Law—where Plaintiff is a founding partner—for an inspection of the law firm's Form I-9 Employment Eligibility Verification forms just weeks before the border search occurred. Plaintiff further fails to inform the Court that after HSI's inspection of the documents produced by his firm, HSI identified 117 employees of Georges Cote Law who appeared to be unauthorized to work in the United States.

Against that backdrop, Plaintiff cannot establish that he is likely to succeed on the merits of his claims because there was reasonable suspicion to conduct a border search at Logan Airport and to detain Plaintiff's cell phone. Because failure to establish a likelihood of success on the merits is dispositive of Plaintiff's motion for injunctive relief, the Court need go no further. Plaintiff's motion for emergency injunctive relief must be denied.

## **BACKGROUND**

### I. **USCIS Form I-9, Employment Eligibility Verification**[2]

U.S. Citizenship and Immigration Services ("USCIS") Form I-9, Employment Eligibility Verification ("Form I-9") is used to verify the identity and employment authorization of individuals hired after November 6, 1986 to work in the United States. *See* 8 C.F.R. 274a.2; Form I-9 attached hereto as Exhibit 1; Instructions for Form I-9, attached hereto as Exhibit 2, at p. 1. As part of the employment process, every employee must complete Section 1 of a Form I-9, which provides the employee's biographical information and an employee attestation of their citizenship or immigration status. *See* 8 C.F.R. 274a.2(b)(i)(A); Ex. 1, at Section 1; Ex. 2, at pp. 2–3. The

---

[2] For a general overview of USCIS Form I-9, *see* USCIS Forms, https://www.uscis.gov/i-9 (last accessed Oct. 10, 2025).

employee must also present to the employer documentation that establishes the employee's identity and employment authorization.  *See* 8 C.F.R. 274a.2(b)(i)(B); Ex. 1; Ex. 2, at p. 3.

The employer must examine the documentation presented by the employee.  *See* 8 C.F.R. 274a.2(b)(ii)(A); Ex. 2, at p. 3.  If the documentation does not reasonably appear to be genuine or to relate to the employee, the employer must reject it and may provide the employee with an opportunity to present other documentation.  *Id.*  After examining evidence of the employee's identity and work authorization (i.e., the documents presented by the employee), the employer must complete Form I-9 Section 2 and the employer certification.  *See* 8 C.F.R. 274a.2(b)(ii)(B); Ex. 2, at pp. 4–5.  By completing the employer certification the employer attests, under penalty of perjury, that the documentation provided by the employee was examined, appears to be genuine and to relate to the employee, and that to the best of the employer's knowledge the employee is authorized to work in the United States.  *See* 8 C.F.R. §§ 274a.2(a)(3), (b)(1); Ex. 1, Section 2.

Employers are required to retain Forms I-9 for as long as the employee works for the employer (and for a period of time after the employment ends), and to store completed Forms I-9 "in a safe and secure location."  *See* 8 U.S.C. § 1324a(b)(3); 8 C.F.R. §§ 274a.2(b)(2); Ex. 2, at p. 6.  The employer is also required to make Forms I-9 available for inspection by DHS.  Ex. 2, at p. 7; 8 U.S.C. § 1324a(b)(3); 8 C.F.R. §§ 274a.2(b)(2)(ii).

## II.    Unlawful Employment Of Aliens

8 C.F.R. § 274a.2 establishes the requirements and procedures for verification of employee identity and employment authorization and designates the Form I-9 as the means of documenting the employee's identity and authorization for employment.  8 U.S.C. § 1324a, makes it unlawful to employ an unauthorized alien, and to continue to employ the individual knowing that they are unauthorized for employment.  *See* 8 U.S.C. §§ 1324a(a)(1), (a)(2).

As noted previously, an employer's signature on a Form I-9 attests under penalty of perjury that the employer has examined the verification documentation presented by the employee, that the documentation reasonably appears to be genuine and to relate to the employee, and that to the best of the employer's knowledge the employee is authorized to work in the United States. *See* 8 U.S.C. § 1324a(b). On the Form I-9, the employer attests that the information the employer entered in Section 2 is "complete, true, and correct to the best of their knowledge, and that they are aware that they may face civil or criminal penalties provided by law and may be subject to criminal prosecution for knowingly and willfully making false statements or knowingly accepting false documentation when completing [a] Form I-9." *See* Ex. 2, at p. 7.

As noted, employers may be subject to criminal and civil penalties for violation of the applicable employment regulations and laws. *See* 8 U.S.C. § 1324a, 1324b; 8 C.F.R. § 274a.10; and 28 C.F.R. Part 44); Ex. 2, at p. 7 (citing statute and regulations). Additionally, individuals may be prosecuted for "knowingly and willfully entering false information, or for presenting fraudulent documentation, to complete [a] Form I-9." *Id.*

## III. DHS Notifies Georges Cote Law Of Apparent Employment Of Aliens Unauthorized To Work In The United States

As stated earlier, an employer is required make Forms I-9 available for inspection by HSI. 8 U.S.C. § 1324a(b)(3); 8 C.F.R. §§ 274a.2(b)(2)(ii); Ex. 2, at p. 7. On September 8, 2025, HSI served Plaintiff's law firm, Georges Cote Law, with a Notice of Inspection of the firm's Forms I-9 and supporting documentation related to the firm's current employees and employees who were terminated on or after October 1, 2022. *See* Notice of Inspection, attached hereto as Exhibit 3. The Notice of Inspection was accompanied by an administrative subpoena. *Id.* In addition to the Forms I-9, HSI required presentment of identity and/or employment authorization documents the employees provided as part of the employment eligibility verification process. *Id.* The purpose

of HSI's inspection was to "assess [Plaintiff's law firm's] compliance with federal laws and regulations applicable to employment eligibility verification." *Id*. Georges Cote Law was advised that failure to provide the requested documents "may lead to civil or criminal penalties." *Id*.

On September 9, 2025, HSI conducted an inspection of Georges Cote Law's Forms I-9 and the supporting documents provided by the firm. *See* Notice of Suspect Documents, attached hereto as Exhibit 4. On September 25, 2025, HSI served a Notice of Suspect Documents informing Georges Cote Law that a review of the records produced by Plaintiff's firm indicated that 117 of the law firm's employees "appear unauthorized to work in the United States." *Id*. The inspection revealed that the identity and/or employment eligibility documents submitted for the 117 identified employees "were found to relate to other individuals, or lacked a record of issuance," or, in cases where the documents did not correspond to the employees, did "not reflect valid and/or current work authorization in the United States." *Id*. Plaintiff's law firm was informed:

> Employers who continue to employ individuals who are not authorized to work in the United States may face civil penalties, ranging from [civil monetary fines] per unauthorized worker for a first violation. Higher penalties may be imposed for a second or subsequent violation. Additionally, criminal charges may be brought against individuals or entities engaging in a pattern or practice of knowingly hiring or continuing to employ unauthorized workers.

*Id*.

HSI further advised Plaintiff's firm that once Georges Cotes Law was notified that an employee—in this case, 117 employees—had "presented documentation that appears to be suspect or invalid as proof of identity and/or employment eligibility," the firm was required to "take reasonable steps to verify identity and/or work authorization of the affected employee" within 10 days.[3] *Id*.

---

[3] Ten days from service of the Notice of Suspect Documents was October 5, 2025.

Three days after service of the Notice of Suspect Documents, Plaintiff was encountered by HSI and U.S. Customs and Border Protection ("CBP") at Logan Airport, where Plaintiff was inspected, a border search was conducted, and Plaintiff's cell phone was detained.  [Doc. No. 1, *generally*].

## IV.    The Border Search

On Sunday, September 28, 2025, Plaintiff was stopped for inspection as he exited the plane at Logan Airport Terminal C.  [Doc. No. 1 at ¶¶ 12, 16–21, 32].  CBP officers and an HSI special agent asked Plaintiff questions and to present his passport, which he did.  *Id*., at ¶¶ 27, 30.  Plaintiff was notified that his electronic devices (in this case, his cell phone) would be inspected as part of a border search, the authority for which was explained to Plaintiff.[4]  *Id*., at ¶¶ 34, 36.  Plaintiff initially refused a search of his phone, but HSI took custody of the cell phone and issued Plaintiff a Detention Notice and Custody Receipt for Detained Property.  *Id*., at ¶ 42.  The phone was returned to Plaintiff eight days later, on October 6, 2025.

---

[4] To the extent Plaintiff challenges that he was subject to a border search upon entry to the United States because of his preclearance in Aruba, *see* Doc. No. 7 at pp. 7–8, this argument fails at the outset.  19 C.F.R. § 162.6 provides that:

> All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer. Port directors and special agents in charge are authorized to cause inspection, examination, and search to be made under section 467, Tariff Act of 1930, as amended (19 U.S.C. 1467), of persons, baggage, or merchandise, even though such persons, baggage, or merchandise were inspected, examined, searched, or taken on board the vessel at another port or place in the United States or the Virgin Islands, if such action is deemed necessary or appropriate.

Additionally, Article V of the Agreement between the United States and the Netherlands (on behalf of Aruba) establishing a preclearance arrangement between the nations specifically contemplates continued inspections of travelers and their belongings upon arrival in the United States.  *See Treaties and Other Int'l. Acts Series 96-304, Agreement Between the United States of America and the Netherlands, in Respect of Aruba* (Dec. 2, 1994), attached hereto as Exhibit 5.

## STANDARDS OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Capen v. Campbell*, 134 F.4th 660, 666 (1st Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." *Id.* (citing *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013)). "To demonstrate likelihood of success on the merits, a plaintiff must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012). Likewise, a preliminary injunction cannot issue based on possible injury. Rather, a plaintiff must establish that irreparable harm is "likely in the absence of an injunction." *Winter*, 555 U.S. at 22. If, however, a plaintiff fails to meet his burden to satisfy likelihood of success on the merits, his "failure to do so is itself preclusive of the requested relief." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 158 (1st Cir. 2021) (citations omitted).

## ARGUMENT

## I.    Plaintiff Is Unlikely To Success On The Merits Of His Claims

Plaintiff claims his cell phone was unlawfully seized from him at Logan Airport. [Doc. No. 7 at p. 2]. He alleges that seizure of his phone "was made without a warrant, without consent, and without reasonable suspicion of Plaintiff's involvement in criminal activity." *Id.* Because Plaintiff's phone was returned to him on October 6, 2025, presently at issue is Plaintiff's request

for "an order enjoining Defendants from conduct[ing] any search of the phone," and "an order [that] Defendants destroy any information already obtained from the phone . . .". *Id*.

The information Plaintiff seeks to have expunged was obtained by an advanced search of an electronic device (his cell phone), based upon reasonable suspicion, and therefore a lawful border search. Thus, Plaintiff is unlikely to succeed on the merits of his claims, and the motion for injunctive relief must be denied.

### A.    Fourth Amendment protections at the border are diminished.

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Qin,* 57 F.4th 343, 346 (1st Cir. 2023) (cleaned up). "It is well established, however, that the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior due to the longstanding concern for the protection of the integrity of the border." *United States v. Molina-Gómez*, 781 F.3d 13, 18 (1st Cir. 2015) (cleaned up).

"Border searches—which the Supreme Court has described as searches of travelers and belongings crossing an international boundary of the United States—have long constituted an exception to the Fourth Amendment's warrant requirement." *Qin,* 57 F.4th at 346 (cleaned up). *See also Molina-Gómez*, 781 F.3d at 18 ("As a result, there is a recognized 'border search exception' to the warrant requirement." (citing *United States v. Ramsay*, 431 U.S. 606, 619–622 (1977)); *Alasaad v. Mayorkas*, 988 F.3d 8, 16 (1st Cir. 2021) ("One such exception to the warrant requirement, recognized from early in our history, is the border search exception."). Logan Airport, an international airport, is the "functional equivalent" of an international border and is thus subject to the border search exception. *Id.* at 19 (citations omitted); *see also Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973) (same).

The expectation of privacy "is less at the border than in the interior and the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border." *Alasaad*, 988 F.3d at 16–17 (cleaned up). "Under the border search exception, 'routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant.'" *Molina-Gómez*, 781 F.3d at 19 (citing *United States v. Montoya de Hernández*, 473 U.S. 531, 538 (1985); *United States v. Braks*, 842 F.2d 509, 514 (1st Cir. 1988) ("The First Circuit standard for routine border searches is the 'no suspicion' standard.")).

"Agents may perform routine searches at the border without reasonable suspicion." *Alasaad*, 988 F.3d at 18 (cleaned up). "Non-routine" searches, however, "must be grounded on reasonable suspicion." *Id.* (citing *Molina-Gómez*, 781 F.3d at 19; *Braks*, 842 F.2d at 513-14). "The required reasonable suspicion must be 'objective' and based on 'specific and articulable facts taken together with rational inferences from those facts." *Qin,* 57 F.4th at 347 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The evidence needed to support reasonable suspicion is less than that needed to support probable cause and 'considerably' less than that needed for 'proof of wrongdoing by a preponderance of the evidence.'" *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Advanced border searches of electronic devices [based on reasonable suspicion] may be used to search for contraband, evidence of contraband, or for evidence of activity in violation of the laws enforced or administered by CBP or ICE." *Alasaad*, 988 F.3d at 21.

And while Plaintiff contends that the border search was unlawful because Defendants lacked a warrant or probable cause to search his phone, courts have not extended a warrant requirement to a border search, even one that is non-routine. *Malik v. U.S. Dept. Homeland Sec.*, 78 F.4th 191, 201 (5th Cir. 2023) (citing *Alasaad*, 988 F.3d at 17); *United States v. Mendez*, 103

F.4th 1303, 1307 (7th Cir. 2024) ("Routine or otherwise, searches at the border 'never' require a warrant or probable cause."). "[N]o court has required more than reasonable suspicion to justify even an intrusive border search." *Alasaad*, 988 F.3d at 18 (citing *United States v. Cano*, 934 F.3d 1002, 1015–16 (9th Cir. 2019)) (holding that "manual searches of cell phones at the border are reasonable without individualized suspicion, whereas forensic examination of a cell phone requires a showing of reasonable suspicion").[5]

"Border searches never require a warrant or probable cause." *United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018) (holding forensic search of phones required neither a warrant nor probable cause) (citing *Ramsey*, 431 U.S. at 619); *see also United States v. Castillo*, 70 F.4th 894, 897 (5th Cir. 2023) ("For border searches both routine and not, no case has required a warrant."). "At the border, the highest standard for a search is reasonable suspicion." *Id.* (citations omitted). And "given the volume of travelers passing through our nation's borders, warrantless electronic device searches are essential to the border search exception's purpose of ensuring that the executive branch can adequately protect the border." *Mendez*, 103 F.4th at 1309 (citing *Alasaad*, 988 F.3d at 17). "It is therefore unsurprising that no appellate court has required a greater quantum of suspicion for cell phone searches at the border than the reasonable suspicion that suffices for sensitive searches of travelers' bodies." *United States v. Gavino*, No. 22-CR-136

---

[5] In *Cano,* the Ninth Circuit also concluded that "the border search exception is restricted in scope to searches for contraband." *Cano*, 934 F.3d. at 1019. In *Alasaad*, the First Circuit held that neither a warrant nor probable cause was required for a border search of electronic devices, and expressly disagreed with the holding in *Cano*, noting, "[w]e cannot agree with its narrow view of the border search exception because *Cano* fails to appreciate the full range of justifications for the border search exception beyond the prevention of contraband itself entering the country. Advanced border searches of electronic devices may be used to search for contraband, evidence of contraband, or for evidence of activity in violation of the law enforced or administered by CBP or ICE." 988 F.2d at 20–21.

(RPK), 2024 WL 85072, *5 (E.D.N.Y. Jan. 7, 2024) (citing *Cano*, 934 F.3d at 1015–16). To be sure, "[a] warrant requirement—and the delays it would incur—would hamstring agencies' efforts to prevent border-related crime and protect this country from national security threats." *Alasaad*, 988 F.3d at 17. *See also Vergara*, 884 F.3d at 1312–13 ("Border searches have long been excepted from warrant and probable cause requirements . . .").[6]

For these reasons, a search of Plaintiff's cell phone at Logan Airport (the functional equivalent of an international border) required, at most, reasonable suspicion.

## II.    There Was Reasonable Suspicion For An Advanced Search Of Plaintiff's Cell Phone

HSI "is the primary investigative arm of DHS." *United States v. Austin*, 640 F. Supp. 3d 171, 175 (D. Mass. 2022). The agency "conducts federal criminal investigations into the illegal movement of people, goods, money, contraband, weapons and sensitive technology into, out of and through the United States." *See* https://www.ice.gov/about-ice/hsi. HSI is authorized to investigate all federal crimes including but not limited to 8 U.S.C. § 1324a. *See* 8 U.S.C. § 1103(a)(1); Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (codified at 6 U.S.C. § 112 (2006)) (functions of the Secretary of DHS); *Burgess v. O'Malley*, No. 23-cv-11805-ADB, 2024 WL 4123650, *5 (D. Mass. Sept. 9, 2024) (DHS was formed as an umbrella organization with USCIS, ICE, and CBP); *Bens v. U.S. Immigr. & Customs Enf't*, Civil Action

---

[6] Plaintiff's motion claims he was targeted, and his cell phone was seized, "based solely on his expressive material and association with immigrants," in violation of the First Amendment. [Doc. No. 7 at p. 9]. As explained herein, such is not the case. However, Plaintiff does not allege a higher level of suspicion is required for a search of the "expressive material," nor can he. "A higher level of suspicion is not generally required to search potentially expressive materials." *Alasaad*, 988 F.3d at 23 (citing *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986); *United States v. Brunette*, 256 F.3d 14, 16 (1st Cir. 2001) ("the probable cause standard is no different where First Amendment concerns may be at issue"); *United States v. Ickes*, 393 F.3d 501, 507 (4th Cir. 2005) ("refusing to apply a different standard to border searches of expressive material"); *United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008) (same)).

No. 14-13499-JCB, 2016 WL 11978261, *2 (D. Mass. Mar. 30, 2016) ("HSI investigates issues such as immigration crime, human rights violations and human smuggling, the smuggling of narcotics, weapons and other types of contraband, in addition to financial crimes, cybercrime and export enforcement issues."). "Advanced border searches of electronic devices may be used to search for contraband, evidence of contraband, or for evidence of activity in violation of the laws enforced or administered by CBP or ICE." *Alasaad*, 988 F.3d at 21.

Plaintiff erroneously asserts that the border exception does not apply to the search and seizure of an immigration attorney's cell phone. [Doc. No. 7 at p. 6]. In *Malik*, 78 F.4th at 194, the plaintiff was an attorney who practiced immigration law and who was the managing partner of his law firm. Malik's work required frequent international travel, and his clients often litigated against DHS. *Id*. When Malik landed in Dallas on a flight from Costa Rica, border officers directed him to a secondary screening area for questioning. *Id*., at 195. Officers asked Malik to unlock his phone, but Malik refused because of the privileged data on the phone. *Id*. Officers seized the phone and informed Malik they intended to search it. *Id*. DHS conducted a border search of the data and returned the phone to Malik approximately five months later. *Id*. Malik brought an action against DHS challenging DHS's warrantless search and seizure of his phone, sought a permanent injunction prohibiting DHS from searching the phone, and sought an order requiring destruction of information obtained from the phone. The district court granted summary judgment to DHS, and Malik appealed. On appeal, the Fifth Circuit held that a non-routine border search of the attorney's cell phone data did not violate Malik's constitutional rights, reiterating that "nonroutine searches need only reasonable suspicion, not the higher threshold of probable cause." *Id*., at 200 (citation omitted). As the court explained, "[r]easonable suspicion requires

13

only a minimal level of objective justification that consists of more than inchoate or unparticularized suspicion or hunch." *Id.* (citation omitted).

As was the case in *Malik*, the "low threshold" of reasonable suspicion is easily met here. *Id.* at 201. In the month preceding the encounter with Plaintiff at Logan Airport, HSI obtained employment records from Plaintiff's firm pursuant to an immigration enforcement subpoena authorized by 8 U.S.C. § 1225(d), and 8 C.F.R. § 287.4. HSI inspected those records which revealed that 117 of the law firm's employees appeared to be unauthorized to work in the United States. The connection between Plaintiff—the founding partner of the law firm—and the law firm's apparent employment of persons not authorized to work in the United States is clear, is "plenty to create reasonable suspicion," *see id.*, and provides objective justification for the border search and detention of Plaintiff's cell phone. Plaintiff's status as a founder and owner of Georges Cote Law imbues him with a greater level of control on the firm's activities. It is common sense to conclude that communications through electronic devices (such as a cell phone) are commonplace and often required to run a business. Here, there was reasonable suspicion based on specific and articulable facts for HSI to detain Plaintiff's phone for evidence of unlawful employment of aliens for which civil and criminal penalties may apply.

Plaintiff's Complaint and request for preliminary injunction Plaintiff invokes the First and Fourth Amendments of the U.S. Constitution, alleges that Defendants lacked reasonable suspicion to seize his phone, and that Defendants "targeted" him because he is "an immigration attorney who represents thousands of clients with mixed immigration statuses who are very publicly the subject of the current administration's effort to expel non-citizens." [Doc. No. 7, at p. 9]. Plaintiff misstates the legal authority relevant to a border search and ignores DHS's investigation of the law firm he founded (and where he remains the founding partner) for questionable employment

practices for which civil and criminal penalties may apply.  Instead, by claiming to be a victim of "federal agents . . . carrying out the Administration's plan" to expel noncitizens, Plaintiff attempts to divert attention from his own (and his law firm's) potential wrongdoing and attempts to circumvent any investigatory process by asking this Court to order destruction of information obtained from the border search of his cell phone—information that is potential evidence of his firm's apparent employment of aliens who are unauthorized to work in the United States.  [Doc. No. 7 at 10].

Plaintiff's efforts should not be rewarded, and his motion must be denied.  The objective, specific, and articulable facts, and rational inferences from those facts provided reasonable suspicion to conduct a border search for "contraband, evidence of contraband, or for evidence of activity in violation of the laws enforced or administered by CBP or ICE."  *Alasaad*, 988 F.3d at 21.[7]  Plaintiff is unlikely to succeed on the merits of his claim, and his motion for injunctive relief should be denied.

## III.    Expungement Is Not Warranted

Plaintiff argues that he is entitled to destruction (or, expungement) of all information obtained by Defendants from his cell phone.  Expungement "is an extraordinary measure committed to the discretion of the Court."  *Alasaad v. Nielsen*, 419 F. Supp. 3d 142, 171 (D. Mass. 2019), *aff'd in part, vacated in part, rev'd in part sub nom. Alasaad*, 988 F.3d 8  (citations omitted). "Indeed, courts may order expungement for constitutional violations only in extreme

---

[7] For purposes of opposing Plaintiff's motion for injunctive relief, Defendants rely upon the Notice of Inspection (Ex. 3) and Notice of Suspect Documents (Ex. 4) to support reasonable suspicion.  If, however, the Court disagrees that reasonable suspicion exists on the information contained in this opposition, Defendants respectfully request that they be permitted to file, *ex parte*, additional privileged law enforcement sensitive information and documents for the Court's consideration.

circumstances." *Adlerstein v. United States Customs & Border Prot.*, No. CIV 19-500-TUC-CKJ, 2020 WL 5846600, *16 (D. Ariz. Oct. 1, 2020) (citing *United States v. Smith*, 940 F.2d 395 (9th Cir. 1991). No such "extreme circumstances" exist here, and the extraordinary remedy of expungement is not warranted. *See e.g. Malik*, 78 F.4th at 200 (finding no entitlement to expungement where reasonable suspicion for a border search existed).

For the reasons explained above, Defendants had reasonable suspicion to conduct a border search of Plaintiff at Logan Airport and a good faith reason to believe that a search of Plaintiff's phone did not violate the First or Fourth Amendments. But even if the Court disagrees, expungement is not the remedy. "If the costs of exclusion are too high in criminal trials where agents have a good faith basis for believing a search did not violate the Fourth Amendment, at least the same must be true at the border given the paramount governmental interests previously discussed, particularly where the law regarding the legality of electronic device searches has been in flux and has been the subject matter of ongoing litigation in several courts." *Alasaad v. Nielsen*, 419 F. Supp. 3d at 171 "The same is also true of the analogous, but broader, remedy of expungement of the information obtained during searches of Plaintiffs' electronic devices. Even where evidence obtained in an unconstitutional manner has been suppressed, a further remedy of expungement does not follow." *Id.* (citing *United States v. Field*, 756 F.3d 911, 917 (6th Cir. 2014)) (declining to expunge arrest record where evidence was suppressed).

Here, objective, specific, and articulable facts, and rational inferences from those facts existed to provide reasonable suspicion for Defendants to conduct a border search of Plaintiff's cell phone for evidence of activity in violation of the laws enforced or administered by Defendants. *See Alasaad*, 988 F.3d at 21. As such, Plaintiff's request for destruction of any data obtained from a lawful border search of his cell phone must be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Emergency Motion to Return an Attorney's Unlawfully Seized Cell Phone and to Enjoin the Search of the Attorney's Cell Phone [Doc. No. 6].

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3369
Dated: October 14, 2025          Eve.Piemonte@usdoj.gov