## **AFFIDAVIT OF AUDAI COTE**

1. In or around June 2016, I founded Georges Cote Law in Chelsea, Massachusetts.
2. The firm is a Limited Liability Partnership (LLP) owned equally by myself (50%) and my business partner, Andrew Lattarulo (50%).
3. I tend to serve as the de facto Managing Partner, responsible for the firm's overall oversight and day-to-day operational management, including staffing.
4. I also serve as the firm's registered agent.
5. As a practicing attorney, my primary focus is on personal injury, workers comp, and other civil litigation related matters. While I meet with and consult immigration clients as part of firm operations, for business development purposes, immigration is not marketed as part of my personal practice. Accordingly, I do not post about immigration matters or politics on my professional or personal social media accounts.
6. When Homeland Security Investigations ("HSI") contacted our firm regarding employment verification, I personally communicated with the agents, confirmed that I would provide all requested documentation in my possession, and advised them that the firm did not have any I-9 forms on file. In accordance with their subpoena, we did not create or backdate forms to give the impression they had previously been completed.
7. Prior to this matter, I had never been contacted by HSI regarding employment verification issues at Georges Cote Law.
8. On September 8, 2025, Georges Cote Law received a subpoena from HSI requesting employment verification information. This was the first audit request of this nature at the firm. See Exhibit B.
9. In response to the subpoena, on September 12, 2025, Georges Cote Law provided the requested information to HSI via email, including names, employment status, last four digits of Social Security numbers, gender, and other identifying information, as instructed, as well as payroll journals and an I-9 supplemental information questionnaire. Id. at 7.
10. On September 25, 2025, while I was in Aruba with Attorney Andrew Lattarulo, Georges Cote Law was subsequently served with a Notice of Suspect Documents. Because I was traveling with Attorney Lattarulo at that time, I can confirm that he was out of the

country and unavailable to receive that notice personally. I did not become aware of the Notice of Suspect Documents until after my return to the United States.

11. Of the 117 individuals identified in the Notice of Suspect Documents, HSI was previously informed that more than fifty were inactive (terminated, resigned, or otherwise), as we provided them with an Excel spreadsheet identifying the active or inactive status of each person, going back several years, per their request.

12. Shortly after my return and upon learning of the Notice of Suspect Documents, I contacted Agent Eric Cohen by phone to determine how best to proceed. I was advised that I could complete the requested I-9 forms and submit them to his attention. After having all active employees complete their forms individually, I emailed the completed forms to Agent Cohen on October 15.

13. On September 25, 2025, I flew from Logan International Airport in Boston, Massachusetts to Aruba on JetBlue Flight 2173.

14. On September 27, 2025, I returned from Aruba to Logan International Airport in Boston, Massachusetts on Flight 474. To my knowledge, I was not subjected to any advanced screening upon reentry, and no electronic devices were confiscated from me.

Signed under the pains and penalties of perjury this 18th day of October 2025.

Audai Cote /s/
Audai Cote