UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDREW LATTARULO,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*, and THE DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; JOHN DOES 1–3, *in their official capacities as agents of U.S. Immigration and Customs Enforcement*; JANE DOE, HSI ID NO.: 11049, *in her official capacity as an agent of Homeland Security Investigations*; and THE UNITED STATES OF AMERICA,<br><br>Defendants. | * | Civil Action No. 25-cv-12861-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is Plaintiff Andrew Lattarulo's motion, [ECF No. 6 ("Mot.")], for a preliminary injunction under Federal Rule of Civil Procedure 65.[1] For the following reasons, the motion is **GRANTED**.

---

[1] Lattarulo's motion seeks a variety of equitable remedies: "the immediate return of the phone," "an order enjoining Defendants from conduct[ing] any search of the phone," and "an order [requiring] the Defendants [to] destroy any information already obtained from the phone or, in

## I. BACKGROUND

### A. Facts

Andrew Lattarulo is an immigration lawyer and part owner of the law firm Georges Cote LLP, which represents "thousands of clients in active immigration proceedings." [ECF No. 1 ("Compl.") ¶ 1]. Lattarulo also runs a popular Instagram account featuring videos of himself discussing "know-your-rights information about U.S. immigration matters," [id. ¶ 59], which regularly "amasses hundreds of thousands of views," [id. ¶ 60]. Georges Cote is currently being investigated by Homeland Security Investigations ("HSI"), the investigative arm of the Department of Homeland Security ("DHS"), for employing individuals without a legal right to work in the United States. See [ECF No. 15 ("Opp'n") at 6]. Audai Cote, "the registered agent and individual in charge of I-9 compliance" at the firm, was served with a Notice of Inspection on September 8, 2025. [ECF No. 16 ("Reply") at 2]. Unlike Lattarulo, "Cote is not an immigration attorney—he focuses on personal injury." [Id. at 5]. The firm responded on September 12, 2025, and the government sent Cote a Notice of Suspect Documents on September 25, 2025. [Id. at 3]. The firm was given ten days to attempt to verify the identity and work authorization of the employees named in the Notice of Suspect Documents. [Id.].

In late September 2025, while the HSI investigation proceeded, both Lattarulo and Cote travelled from Boston to Aruba for a weekend trip. [Compl. at 2]; [id. ¶ 12]. On September 27, 2025, Cote arrived back at Logan Airport from Aruba without issue. [Reply at 3]. Lattarulo

---

the alternative, that any information already obtained be segregated and turned over to the Court for impoundment until this matter is resolved." [Id. at 2]. Given that Defendants have already searched and returned the cell phone, the Court construes Lattarulo's motion as seeking a preliminary injunction enjoining Defendants from accessing the data obtained from the phone before this action is resolved.

made the same journey the following day, September 28, 2025. Lattarulo passed through customs preclearance in Aruba before boarding a flight to Boston. [Compl. ¶¶ 12–13]. When his flight arrived at Logan Airport, three U.S. Customs and Border Protection ("CBP") agents and one HSI officer stopped Lattarulo as he got off the plane. [Id. ¶¶ 17–20]. The agents seized his cell phone without a warrant and then downloaded a complete copy of the data stored on the phone.[2] [Id. ¶¶ 23, 24, 34, 35, 40, 42]. Eight days later, they returned the cell phone via overnight delivery. [Opp'n at 2 n.1]. The seized cell phone data is currently in a format that is not readable or reviewable, but the government intends to convert the data to an accessible format and search it if the Court permits.[3] The data includes confidential information, including privileged attorney-client communications related to Lattarulo's clients. [Compl. ¶ 82].

**B. Procedural History**

On October 2, 2025, Lattarulo filed a Verified Complaint and Request for Injunctive Relief, seeking (1) a declaratory judgment that the seizure and search of his cell phone violated his First and Fourth Amendment rights, (2) return of the seized cell phone, (3) "documentation of the chain of custody of any copies made of the information contained on his cell phone," and (4) "documentation of the destruction of said information." [Compl. at 12–15]. That same day, he filed an emergency motion seeking the return of his cell phone, [ECF No. 2], and the next day a motion for a temporary restraining order, [Mot.]. The Court granted a temporary restraining order, [ECF No. 10], and, after conferring with the parties on October 7, 2025, [ECF No. 14], scheduled a preliminary injunction hearing for October 20, 2025, [ECF No. 17]. Defendants

---

[2] This fact was stated by counsel for Defendants at a hearing on this motion.
[3] The Government was clear that any search of the contents of the phone would utilize a taint team to protect privileged information.

opposed Lattarulo's motion on October 14, [Opp'n], and Lattarulo filed a reply on October 19, [Reply]. Following the hearing, the Court took the parties' positions under advisement.

## II. LEGAL STANDARD

"In determining whether to grant a preliminary injunction, [a] district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Tech., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). Likelihood of success on the merits is the factor that "weighs most heavily in the . . . analysis." CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (citing Ross-Simons, 102 F.3d at 16).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Lattarulo contends that the warrantless seizure and search of his phone and its contents violated the Fourth Amendment, and further, that his First Amendment rights were violated, both because he was targeted for his political speech and because the search of his phone could force disclosure of privileged information, [Compl. ¶¶ 65–81]. Defendants reply that there was no Fourth Amendment violation because Lattarulo was at the border when his property was seized and the investigation of his law firm supplied reasonable suspicion to search his cell phone, which was all that was required, [Opp'n at 9–10]. As to his First Amendment claim, Defendants argue that Lattarulo was targeted for his firm's alleged legal violations and not because of his speech or his work associations, [id. at 12–15, 12 n.6], and that there will be no compelled

disclosure of privileged information because they will implement adequate safeguards to protect such information.

**1. First Amendment**

Lattarulo challenges the search on two First Amendment grounds: retaliation and compelled disclosure. The Court considers these in turn.

i. Retaliation

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). To establish a prima facie claim of First Amendment retaliation, "[a] plaintiff must . . . prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. ex rel. Elizabeth B v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). The retaliatory motive "must be a 'but-for' cause" of the adverse action. Nieves v. Bartlett, 587 U.S. 391, 399 (2019). To show causation, a party "need not produce direct evidence . . . [but] may rely on circumstantial evidence." Davignon v. Hodgson, 524 F.3d 91, 106 (1st Cir. 2008) (citing Guilloty Perez v. Pierluisi, 339 F.3d 43, 56–57 (1st Cir. 2008)).

Here, the first two elements are not in dispute. Lattarulo's public statements in opposition to the government's immigration policies are protected by the First Amendment, as is his representation of individuals in immigration proceedings, see Legal Services Corp. v. Velazquez, 531 U.S. 533, 547–48 (2001); and searches and seizures are actionable adverse actions under the First Amendment, see Degenhardt v. Bintliff, 117 F.4th 747, 759 (5th Cir.

2024). The retaliation issue therefore turns on causation—that is, whether the seizure and search of Lattarulo's cell phone would have occurred but for his protected speech.

Respondents have provided no evidence that searches of cell phones are frequently conducted during the kind of employment investigation at issue here, and Lattarulo has directed the Court to sources which suggest otherwise, see [Reply at 4 n.4]. Indeed, Lattarulo's evidence suggests that any pursuit of criminal charges against employers for employing unauthorized immigrants is exceedingly rare. [Id.]. The fact that the government, after Lattarulo spoke out publicly against it, elected to adopt a highly unusual investigative method that appears designed to inflict a maximal burden on Lattarulo lends substantial support to an inference that its actions were pretextual.

The stage of the investigation at which the search occurred further bolsters the inference of pretext. Under HSI's own policies, the agency "presumes that employers who, within 10 business days of receiving a Notice of Suspect Documents, verify the identity and/or employment authorization of the listed employees, or take appropriate actions to address the apparent employment of unauthorized workers, have demonstrated reasonable care under the INA." [ECF No. 15-4 at 2]. The government's search occurred only three days after Georges Cote first received a Notice of Suspect Documents, [Compl. ¶ 12]; [ECF No. 15-4 at 3], meaning that the agency was still early in its period of "presum[ing]" compliance when it occurred. Thus, the government's actions here required it to short-circuit its orderly investigative procedures and cast aside its ten-day presumption of compliance in favor of immediately seizing Lattarulo's phone. That aggressive deviation from protocol strongly suggests that the seizure did not arise from an ordinary investigative motive.

Further, Lattarulo has identified an "otherwise similarly situated individual not engaged in the same sort of protected speech," Nieves, 587 U.S. at 407, who was not subjected to the same enforcement action: his law firm partner Audai Cote, who had the same or greater access to the firm's employment records but did not speak publicly about immigrant rights. Indeed, if the government was truly intent on seizing evidence at the first possible opportunity, Mr. Cote, who returned to America a full day before Lattarulo, would have been a more logical target. [ECF No. 16-1 ¶ 14]. Nonetheless, the government opted to wait until Lattarulo touched down in Boston the next day and subject only him to an intrusive cell phone search. The balance of the evidence currently before the Court thus suggests that Lattarulo is likely to establish that he would not have been searched except for his protected speech.[4]

It is true that Defendants can "prevail . . . by showing that the [search] would have been initiated without respect to retaliation," Lozman v. Riviera Beach, 587 U.S. 87, 97 (2018), and here Defendants state that they have additional evidence which would show as much, but they have not provided it because they assert that doing so would prejudice an ongoing investigation. Lattarulo opposes the Court reviewing the evidence in camera, contending that the Court should simply grant his motion for preliminary injunction and then consider the evidence at a later stage

[4] Defendants seek a bright-line rule that because they had reasonable suspicion to conduct the search, Lattarulo cannot show that retaliation was a but-for cause. [Opp'n at 14–15]. The Court disagrees. It is true that the presence of probable cause generally precludes a finding of causation in a retaliatory arrest case, see Nieves, 587 U.S. at 404, 406, but the Supreme Court has recognized a limited exception for situations in which officers who "have probable cause to make arrests [for a particular crime] . . . typically exercise their discretion not to do so," id. at 406, such as "an individual who has been vocally complaining about police conduct . . . [before being] arrested for jaywalking," id. By analogy, the limited record before the Court suggests that searches of cell phones are not regularly conducted during the kind of employment investigation at issue here and that Lattarulo's own law firm partner was not subjected to the same seizure and search of property. The presence of reasonable suspicion therefore does not categorially bar a finding of causation under Nieves.

of these proceedings. See [ECF No. 27 at 2]. In the interests of judicial economy, where Defendants were not willing to proffer the evidence in open court and Lattarulo opposes the Court's in camera review, the Court concludes that the limited record that is before the Court suggests that Lattarulo is likely to succeed on the merits of his First Amendment retaliation claim and that the record before it is therefore adequate to grant the limited preliminary relief contemplated by this order.

ii. Compelled Disclosure

Lattarulo also raises a compelled-disclosure challenge, but that challenge now appears to be foreclosed by the government's willingness to implement a taint team when reviewing the data. "The First Amendment provides protections—independent of the Fourth Amendment—against the compelled disclosure of expressive information." Alasaad, 988 F.3d at 22 (first citing Buckley v. Valeo, 424 U.S. 1, 64 (1976); then citing Tabbaa v. Chertoff, 509 F.3d 89, 102 n.4 (2d Cir. 2007)). In Alasaad, the First Circuit rejected a facial challenge to advanced border searches under the First Amendment, see Alasaad, 988 F.3d at 22–23, but expressly reserved the possibility of a future as-applied challenge if border searches were being used to pierce the attorney-client privilege, id. at 23 n.17. Lattarulo argues that "[t]his is exactly what happened here," [Mem. Supp. Mot. at 9], but he does not explain how, under the circumstances, the attorney-client privilege will be compromised by a search of the phone, assuming that proper steps are taken to wall off any privileged materials that may be stored on the phone. Counsel for Defendants committed at the preliminary injunction hearing to implement processes to ensure that no privileged information was discovered if the government were permitted to search the phone. Provided that Defendants take adequate steps to safeguard any privileged information, the instant case is indistinguishable from Alasaad.

Should the government be allowed to search the phone in the future, the Court recognizes that there may be challenges in properly segregating the privileged from the non-privileged information given that both may include names and phone numbers and that there may even be overlap between the clients and the suspect employees. The Court strongly cautions the Government to be aware of these challenges and to arrange a very conscientious protocol for safeguarding privileged materials in the event that it is eventually allowed to inspect the data at issue.

* * *

In sum, the Court finds that Lattarulo is likely to succeed on his First Amendment claim, at least under a retaliation theory. That finding is sufficient to satisfy the likelihood of success on the merits element for the preliminary injunction he requests. See de Jesus Santos v. Mullin, 2026 WL 2390130, at *11 (D. Mass. Aug. 17, 2026) ("A 'plaintiff need only establish a likelihood of succeeding on the merits of any one of [its] claims for a preliminary injunction to be granted.'" (quoting President & Fellows of Harvard Coll. v. United States Dep't of Homeland Sec., 788 F. Supp. 3d 182, 209 (D. Mass. 2025))).

**2. Fourth Amendment**

Because Lattarulo's likelihood of success on his First Amendment claim is sufficient for the preliminary injunction he seeks, the Court declines at this stage to rule on the merits of Lattarulo's Fourth Amendment claim, which raises difficult doctrinal issues that are better addressed with the benefit of a fuller record. Nonetheless, to guide the parties as this case proceeds, the Court will briefly discuss some of the legal issues it views this claim as raising, and which it hopes to resolve at a later stage of this litigation.

Plaintiffs' Fourth Amendment claim turns largely on the scope of the border search exception to the Fourth Amendment's warrant requirement. That exception "is grounded in the government's 'inherent authority to protect, and a paramount interest in protecting, its territorial integrity.'" Id. at 16 (quoting United States v. Flores-Montano, 541 U.S. 149, 153 (2004)). It allows the government to perform "routine" border searches of electronic devices without suspicion of any crime, and to perform "non-routine" border searches of electronic devices without a warrant, so long as the government has reasonable suspicion. Alasaad v. Mayorkas, 988 F.3d 8, 18 (1st Cir. 2021) (citing United States v. Molina-Gómez, 781 F.3d 13, 19 (1st Cir. 2015)).

The question this case raises is: reasonable suspicion of what? In other words, what types of suspected criminal activities can the government use a warrantless advanced border search to investigate? The First Circuit in Alasaad stated that the exception applies to searches for "contraband" or for "evidence of contraband or a border-related crime." 988 F.3d at 20 (emphasis added). Later in its opinion, however, it stated that the exception applies to searches for "contraband, evidence of contraband, or for evidence of activity in violation of the laws enforced or administered by CBP or ICE." Id. at 21 (emphasis added). In most cases, of course, "border-related crime[s]" and "activity in violation of the laws enforced or administered by CBP or ICE" are synonymous, and the First Circuit in Alasaad appears to have intended to use those terms more or less synonymously.

The difficulty of this case lies in the fact that the suspected violation at issue—employment of unauthorized aliens in the United States in violation 8 U.S.C § 1324a—involves a law that is "enforced or administered by CBP or ICE" but arguably is not a "border-related crime." Based on the information before the Court, there appears to be no connection between

Lattarulo's border crossing (or, more broadly, the government's interest in policing the border) and the suspected crime that formed the basis for the government's border search. Rather, it appears that the government seized on a fortuitous border crossing following a weekend vacation as an opportunity to search for evidence of a domestic crime it was already investigating.

Even though the suspected violation involves aliens and a law administered by ICE, the Court is not convinced that the First Circuit in Alasaad intended for the border exception to apply to investigations into activity that occurred nowhere near the border and that has no relationship to the border crossing during which the search occurred. Nor is the Court convinced that application of the border search exception to this type of investigation would further the principles underlying the exception. Nonetheless, given the novelty of these questions and the fact that a ruling on them is not necessary, the Court will refrain at this point from reaching a firm conclusion on the issue of the border search's applicability.

**B. Remaining Factors**

In relation to Plaintiff's First Amendment claim, each of the remaining factors, namely "(ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest," Harnett, 731 F.3d at 9, weighs strongly in favor of granting the injunction. Regardless of the taint procedures employed, Lattarulo would suffer an irreparable loss of privacy if the government were permitted to search the contents of his cell phone. As for the balance of hardships, Defendants have provided no indication that the information contained on that phone is essential to their investigation of Georges Cote. Finally, the public interest is implicated on both sides of the decision over whether to grant an injunction: on one side is the public interest in preventing government

retaliation for speech and association and protecting the private information of individuals involved in government enforcement actions; on the other is Defendants' interest in enforcing border, immigration, and employment laws. In the present moment, the factors are best resolved in favor of preserving the status quo.

## IV. CONCLUSION

For the reasons herein described, Lattarulo's motion, [ECF No. 6], is **GRANTED**. The Court understands that Lattarulo's cell phone has already been returned to him. Defendants are **ORDERED** to preserve the cell phone data in the current unreadable, unreviewable format until the conclusion of proceedings, but the Court will not order them to destroy that data at this time, given the preliminary nature of these proceedings.

**SO ORDERED.**

November 13, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE